in our final case of the day is Goldman v. Brink and others. Mr. Ferguson, you're representing the board members of the election board or something like that? That's right, your honor, yes. Are you from the Attorney General's office? Yes, sir, Solicitor General. Good to have you with us. Thank you, your honor. You may proceed. Thank you, your honor. May it please the court, as your honor said, Andrew Ferguson representing the election officials. I'm joined at council table by Kevin Gallagher. The plaintiff in this case contends that Virginia broke the law when it failed to hold the 2021 election on the basis of census data, which did not exist when the electoral process began. We strongly disagree, but the question before the court today is whether it has Article 3 jurisdiction to decide this case at all. The answer to that question is no. To establish an injury in fact in a vote dilution case, the plaintiff must show an injury to his individual right to vote. So you're arguing standing right off the bat. We are, your honor. And now the district court didn't address it. Well, two points on that, your honor. We did raise... You had trouble understanding my leading question. The district court didn't address standing. He did address standing. He did not address standing. He did not decide standing. He did not decide standing. All right. That is right, your honor. He addressed it, so he must have analyzed it. He did, your honor. He did address it, but certainly did not decide it. Okay. To establish standing, he has to establish that the composition of the district in which he would vote in or would vote... Let me tell you, in your notice of appeal, it relates to a sovereign immunity order. That's right, your honor. You're trying to appeal immunity. The interlocutory order. You're trying to appeal an order denying immunity. That is right, your honor. And that's the way you got into court here. That is correct, your honor. Okay. So how do we get to standing? I'm sorry, your honor. How do we get to standing? So because standing is... Sovereign immunity. That's right, your honor. I have a question. Altogether, the case is on... I mean, you cannot without dispute as to whether we should address standing, whether or not that's something that's jurisdictional from a subject matter perspective. We can do it at any time, or you have to raise it, or it's interlocutory. I mean, it's a whole lot of questions there. And I appreciate you jumping right on to it, but there is that preliminary question. Do we address standing in this particular case? Certainly, your honor. We think that it's both appropriate and necessary to address standing in this case, or if the court elected not to address standing, at least to remand. The reason that we think that it's... Or we should not address standing and remand. That is another option, your honor. We don't think that's... Who would get it if we remanded? So that is a good question, and the answer is I don't actually know. You don't know? That's right, your honor. Well, there's only one case that all this comes from. I'm sorry, your honor. There's a particular case that all this comes up here from. That is right, your honor. It has a file number on it. That's We would remand it to that... To the district court, no doubt. Who would comprise the district court on remand, I think, is a little bit unclear. That wouldn't be up to us. That's right, your honor. And it's not relevant, I think, to the remand question, except in this... If we remanded, it would simply be remanded to the district court. That's exactly right, your honor. And then... Would that be up to the district court? That's right. And then there's potentially a dispute about whether the three-judge district court that has been convened should dissolve itself so that Judge Novak can decide this in the first instance. And they could decide that among themselves. That's right, your honor. No doubt about that. I don't think that that directly affects the remand question here. Judge Winter... Are we required to address standing? Are we required to? Not whether we should or can. Are we required to address it? I do not think that the court can reach the sovereign immunity question without first assuring itself that it has standing because standing is an Article 3 prerequisite. Answer my question. You're telling me we are required to. I think that if the court elected not to, that the only appropriate recourse would be to remand. But if the court... I understand. That would be what we would do. I would think if you want to take it there, you could remand for termination of standing. But the question is, are we required to do that? I do not think that the court would be required to do it unless it wanted to decide the sovereign immunity question, in which case I think it would first have to ensure itself that it had Article 3 jurisdiction. So if we wanted to decide sovereign immunity, we have to address standing first. I believe so, Your Honor, because it's an Article 3 prerequisite. Have you analyzed this in the context of Icelander? I don't think so, Your Honor. Do you know what Icelander stands for? I know that it's a case and I can't remember what it stands for. It's an old Supreme Court case that established what they called the constitutional avoidance rule, that we ought not to take up constitutional questions or decide constitutional questions. Courts shouldn't. Unless they have to. That's right, Your Honor. So sovereign immunity being a constitutional question, we shouldn't get to it unless we have to. And standing being a constitutional question, we shouldn't get to it unless we have to. But you're saying we have to reach standing. Or we have to send it back. That's right, Your Honor. Someone will have to decide standing in this case. I don't think anyone disputes that, including myself. Ask about when to decide it first, Your Honor. Well, that is an interesting question and it is not exactly clear to me. I did some investigation about why particular strategic decisions were made. I will put it this way. The Commonwealth did raise standing in response to Mr Goldman's first amended complaint. Mr Goldman then amended his complaints for a second time. When the Commonwealth moved to dismiss the second complaint, it moved only to dismiss on the sovereign immunity ground. So the Commonwealth didn't raise standing. The Commonwealth did not. That's who you represent here is the Commonwealth. I represent the election officials who are sued in their official capacity. Yes. You The Commonwealth. So you didn't raise standing. The first thing you stood did when you stood up here today was raised standing. So the Commonwealth did raise and raise it in the district court. I don't fully agree with that, Your Honor. But the Commonwealth did not get mad at over that. The Commonwealth did not raise the arguments that it presses today with regard to standing, but did raise two standing arguments, one in response in the motion to dismiss the first amended complaint, the second at the request of the district judge who wanted standing briefing. Judge Novak then in the hearing on October 12th raised a standing theory very similar to the one that we pressed today. But Your Honor is correct. We did not raise the particular standing arguments that we raised today again. I don't think standing is not forfeitable or waivable, so we could be addressed at any time and has to be addressed before its jurisdiction. That's right, Your Honor. Constitution. That's right, Your Honor. And so insofar as the Ashlander principle would apply, I with respect, I don't think it applies here because this is a constitutional statutory or constitutional jurisdictional prerequisite. There's no way to avoid this one. This will have to be decided to us. Sovereign immunity question. And you say ultimately standing will have to be dressed. The best that I can see you did below was to say it was a problem, but there's no a lot of there's not a lot of articulation on it below. The question is, is, uh, why? Why can't we can't decide the sovereign immunity question, and it doesn't get rid of standing. When you go back, you can bring that up. So that's that's true, Your Honor. We, of course, could bring this up in any time. I think that the reason that sovereign immunity shouldn't be addressed before determining standing is that if the court were to issue an opinion on sovereign immunity but subsequently determined there had never been any standing in this case, that sovereign immunity opinion is effectively an advisory opinion because the court never had jurisdiction to issue it in the first place. So I think that's why the order of operations would be until it's determined you didn't have. Well, that's that. In a sense, that's true, Your Honor. But valid opinion. A judgment is valid until there is a determination that there's something made it without jurisdiction. To some extent, that's true, Your Honor. But if, for example, this court were to deny the sovereign immunity defense and we appealed that decision to the Supreme Court and the Supreme Court determined that there was no standing, it would vacate the lower court judgment because it would have lacked standing from the get-go. So I don't mean to suggest that what the court would say about sovereign immunity would be invalid, but I think it would be slightly jumping the gun if it issued a judgment with regard to sovereign immunity without having assured itself of its Article III jurisdiction. The lower court did exactly that. I agree, Your Honor. And I think that Judge Novak was correct that the posture in which that case finally got to the end was a little bit unusual. I point out as well that at the hearing where he issued the order that we are appealing here today, he set up a schedule to very promptly decide the standing question, but whether that schedule would ever become effective was contingent on... And you disrupted the schedule by filing your notice of appeal. So that is true, Your Honor, but his schedule was... So you took it away from him. He said he didn't have any jurisdiction after you filed your notice of appeal. Well, it's true that he's... I mean, he didn't have jurisdiction. Well, he did. He doesn't have jurisdiction in a general sense, but he has jurisdiction to act in aid of the appeal after you file a notice of appeal, and you didn't tell him that. That's right, Your Honor. He also stayed proceedings below pending... He stayed the proceedings. That's right, Your Honor. But he could have acted in aid of the appeal. And it seems to me that ruling on the standing question in the first instance would have acted in aid of the appeal, and it would have expedited these proceedings to the extent there's any time constraints imposed in these proceedings. You all have delayed it by the way you've conducted this appeal. Respectfully, Your Honor, I don't think that we've delayed it. We had a statute... You filed the notice of appeal and didn't permit the judge to rule on standing, even though he had asked for briefs on standing, I think, or said he was going to. He had established a schedule to... That is the schedule. That's right, but it was contingent on us not filing the notice of appeal. And you filed the notice of appeal, and then the briefs were never filed. That's right. You delayed the case. Well, the notice of appeal did, in fact, stop the case because Judge Novak... You're only appealing the sovereign immunity, which you come up here and tell us now you can't decide that unless you decide the standing first. Well, I do think independently of the way that this was conducted in the district court, every court has to assure itself of its Article III jurisdiction, even if Judge Novak had decided... The question really goes to piecemeal-type ways of litigating. You don't just bring us something up on sovereign immunity. Then something you didn't even bring below comes up and says, oh, we don't have standing. We got it. Yeah, you got it here now. You're saying you ought to now adjust this before you get to sovereign immunity. Judge King is saying, why didn't you just wait and do it where you're supposed to down in the court, then bring us the case? Because now we got a situation... I don't know where we're going with standing or we're going on sovereign immunity, both are jurisdictional to some extent. So we got this competing situation here. We don't like to take cases piecemeal. That's all that means. You forcefully argued... I think it wasn't a good way, but you ought to know if you got jurisdiction to do it. Well, you ought to let the trial court do its job first. So I understood, Judge Wynn. With respect, the Commonwealth had 30 days to notice its appeal of the interlocutory. It took seven days. Because Judge Novak said he wanted an answer in five. That's right. He wanted an answer by October 18th, which we gave him. But if, Your Honor, we had filed our notice of appeal and Judge Novak did as he could have left the standing issue and let it resolve itself while the appeal was pending, it still would have proceeded piecemeal because the sovereign immunity question would be before this court while the standing question was still being adjudicated below. And in any event, even if Judge Novak... You didn't have to file your notice of appeal. You could have permitted the judge, at least under your definition, three more weeks to decide the standing issue. Well, Judge Novak... You said you had 30 days and you filed it after six days. The statute gives us 30 days, but Judge Novak said, I want to know by October 18th whether your... He gave you six days to file a notice of appeal. That's right, Your Honor. So he amended the 30-day rule. Well, I don't think he amended the 30-day rule, but he did say the rest of the case and the rest of the order is contingent on the Commonwealth filing a notice of appeal within six days of the order. What was that three-judge court upon? On the exact same day that the order under review was issued, October 12th. It noticed to the docket on October 13th, but the order from Chief Judge Gregory was dated October 12th. So there's a three-judge court, three-judge district court that's handling this case. A three-judge district court has been convened. No action has had to be taken because of the stay. It's the court... Those three judges, Judge Thacker of this court, one of the members, is presiding over the case. That's right, Your Honor. So if we were to remand it for standing, I would go to that three-judge court. It would, Your Honor. There would then be a preliminary question about whether Judge Novak is required by 2284 to decide the standing question first because it's a threshold question that runs to the substantiality of the federal claim. And a three-judge district court is not supposed to entertain federal claims under 2284 that are insubstantial. And a claim lacking jurisdiction is per se insubstantial. This court has said that since the 1950s. But yes, if there were a remand order in this case, it would go to the three-judge court. And then there would have to be litigation over whether the three-judge court decides it in the first instance. We do have a number of assisted circuits who've looked at this collateral order doctrine. And some of them look back to me. They've said that we shouldn't consider jurisdictional issues like standing when you have a collateral order. Has this circuit rejected that view? It did, Your Honor. In a 2003 case, it held that a plaintiff had standing on an interlocutory order and noted that it had to consider standing because the absence of standing would be a jurisdictional defect. I want to point out further that just as a matter of first principles, I think it would be a little bit anomalous to say that the Steele Company command doesn't reach interlocutory orders because then the courts would effectively be free to issue advisory opinions either under a collateral order review or interlocutory review. And I don't think that the jurisdictional command of Article III kind of stops at the door of an interlocutory review. Now, I concede in this case, there's a separate question about whether remand is the appropriate course to decide the Article III question. But I don't think there's any meaningful dispute about this court's authority to decide it insofar as it wants to reach the question presented by the collateral order. So it's a discretionary call on our part? I think that the question of whether to remand or to decide it in the first instance is a discretionary call. Now, I think that the better exercise of discretion here is to decide it now. And I think that for three reasons. The first is, there isn't a- Normally, though, you'd agree, and we're a court of review, and not a court of first view. We usually, we look at what somebody else did. That's right, Your Honor. What another judge did, what the district judges did. That's right, Your Honor. And I think that there are three good reasons for the courts to decide it in the first instance in this case. The first is, there are no factual disputes about the jurisdictional question. Well, if they want to do discovery. You can do discovery. That's right, there can be jurisdictional discovery, but I don't think there are any meaningful factual disputes at this point, Your Honor. The only question is the appropriate framework by which to judge the standing analysis. So at this point, it's a legal question that this court can decide in the first instance. Second, I think judicial economy- Can I ask you on that? What about candidate standing? There's, I think, an argument that you make about whether he's ready and able, or whatever the standards are. And the courts who have looked at those factors have looked at deposition testimony, evidence. They've looked for evidence that the candidate is ready and able, but we don't have any of that because we haven't had any jurisdictional discovery yet. That's right, Judge Rushing. I have two responses to that. The first is, the allegation in his complaint, which is the only thing he could get discovery to prove, is that he was considering running for an election. Even if the commonwealth were to stipulate that he was considering running for election, just as a matter of law under Carney against Adams, that is insufficient to establish standing, even if he could prove that he was considering running. I think the second point is- You're saying that discovery would be circumscribed? Not circumscribed. I just don't think it's necessary at this point because the dispute is purely a legal one. The judge could lie and do discovery, judge could lie and amend the complaint if he wanted to. When my friend on the other side- While they're trying to figure out this jurisdictional question. When my friend on the other side amended his complaint for a second time, Judge Novak told him there would be no further amendments of the complaint given how many he had already had. Of course, the district court could change its mind on that, but at least as this case arrives now, we've reached the end of the complaint amendment process. My second response on the candidate standing problem, Your Honor, is that we're in this slightly strange posture where the election, the constitutionality of which he is challenging is fully in the past, and that his candidate standing argument now appears to be, I have standing to challenge an election that took place in the past because in the hypothetical future, if a district court exercised its equitable discretion to impose a special election, I am considering standing in that special election. I think at this point, that's just as a matter of law hard to attenuate and on which to base a candidate standing argument, and I've gone over my time. Unless the court has additional questions, I'll reserve the remainder for rebuttal. Wait there a moment. Sure. Thank you, Your Honor. Thanks very much, Mr. Ferguson. We'll get back to you in a few minutes. Mr. Goldman? I'm going to have to sit. I heard my, if that's so- That's fine, Mr. Goldman. You go right ahead. I don't really know where to start. Start with the question. In this matter, we are required to address standing. Okay. Let me just go over some points that he made in terms of the candidate standing. What I said was what any candidate would say. You'd want to at least know the district you were in and the voters you were appealing to before you could make a decision. My question is- I can't hear you. My question is, are we required to even address standing in the past, in this case, this time? No. Is it something that we should send back for a limited remand or some type of remand for the trial court or whatever tribunal to address? As you know, I filed, I don't even think they filed it correctly. Let's go through how this occurred. Judge Novak issued his opinion and then requested a three-judge court from Chief Justice Gregory. In order for Novak to address a three, to ask for three-judge court under the law, he has to decide that there's a substantial federal question. They could have challenged his request for a three-judge court. I don't want to overstate this, but what I'm more interested in is what this court should do right now, what we should do. This matter is before us, and the question that was brought to us is one of sovereign immunity. Generally, in sovereign immunity under the collateral order doctrine, we do not address other issues like jurisdiction, including standing. Of course, your counsel on the other side said there are cases in the Fourth Circuit that says we should. They will be. My question to you is just that. Are we required to address standing? If not, then should we send it back without getting into the 11-minute business of sovereign immunity, and have the court determine that, whichever? Yes, Your Honor. I addressed that in my brief, and I said that it was inappropriate to raise standing in an interlocutory appeal, and it should be sent back, but it has to be sent back to the three-judge court. They want to send it back to the district court. That doesn't exist anymore. The three-judge court, once it's appointed, has now assumed the role of running this case. In fact, they filed their notice of appeal. If you look at the top of it, it's in the general appendix. It says it went to the three-judge court. It was all logged in. The three-judge court has taken over this case, and he says it has to be decided. Judge Novak asked for a three-judge court. They could have objected to it. They didn't. They now have the case. It should be remanded back, and they can discuss standing. Number two, Judge Novak specifically, in his order, said, I am reserving the standing question to me, and he can reserve the standing question. Why does it make a difference which form we send it back to? If we send it back, I mean, why would it make a difference as to whether Judge Novak does it or the three-judge panel? I understand you say he no longer is on the case. That may well be the determination. It may be the determination by either he or the three-judge panel, but why should we get into that question at this level? If we make the determination, it's something that should be addressed. We need to send it back. Somebody needs to address it. We don't need to make that determination, and I doubt there's going to be error regardless as to the particular forum, unless it's a jurisdictional error. So you seem to make it as though that's a contention between you and the government which forum it gets sent to, and I didn't hear that from the government. The government is very forceful in saying we ought to address it, first of all, but if you do, just send it back. And the question is, would that be a problem of just sending it back? In my opinion, which is all I can give, based on the McManus case and based on the fact that a three-judge court has been convened by the chief judge of this court, and under the rules, as I read the cases, they now have the case. They are the only ones you can send it back to. That doesn't make any difference to us. If we send the case back, we send it back to the district court, period, and they deal with it. But it seems to me like you all pretty much agree on what needs to be done here. You're saying it should be remanded. They say for standing. They say we should address standing, but they don't care if it's sent back for standing. Why can't you come up with a consent order and tell us that you want to make a joint motion to remand for consideration of the standing issue or consideration of whatever? I can't say. We're going through an exercise here I'm not sure we even need. Let me tell you, I've sat on those three-judge panels. That statute also says that a single judge can act to conduct proceedings except for the trial. So a single judge actually could potentially do this. And so the question if we send it back, and ultimately, you know, we may just be going around in circles on this, but don't you agree that sooner or later standing is going to have to be addressed? Absolutely. And I was prepared to do it. If standing is addressed adverse to you, is there any need to talk about sovereign immunity? No, and in fact, no, there wouldn't be. So that's almost like even though they're both equal jurisdictional rules, but one is certainly precludes the other. Big time. If you don't have standing, no need to talk about sovereign immunity because you're not going to get there. So the question is, you know, I understand that the counsel gave the unusual posture with the 30 days and a judge giving you just six days for the notice. I don't quite understand that, you know, but I but nonetheless, I'll accept that. But at the end of the day, there ought to be a way we can say, go back and fix this and address standing. Yes, Your Honor. And you can I mean, we could get up and argue about is there standing for voter participation is standing for all that back and forth. Sounds like fact finding to me to some degree, and we don't like doing it. No, we don't do it. If we can help it. I can tell you that. I think that if we look at the case. At the hearing. Judge Novak said, well, why didn't you challenge your standing? He asked them a question. And they said was, well, we think we can do sovereign immunity and that'll take care of it. The fact of the matter is, this case has taken nine months. And we did cause them. It took two weeks. This has been a delay case. And this is why this is the way it is. Judge Novak. In fact, I was working on a stipulation of facts when they decided to file their notice of appeal. We were working on a stipulation. They didn't have a choice. So they had six days or so. I'm telling you, we were I was working on it. And then they called me. I remember I said, well, why should I have to draft the first draft of it? It's your appeal. Well, you're the plaintiff and you have to do standing. Okay. It doesn't bother me. The fact and the facts are way more. And I do have standing, by the way, and I can't wait to get into a courtroom and show why I have standing because this whole case is to try to get people their right to vote. It took two weeks, 40 years ago, and it's nine months now. Maybe you ought to go ahead and make your cases the way you have standing because you never know. My colleagues and I, we may say we do need to address standing. So maybe you better talk about why you think you have standing. It's going to be remanded. Why would I? That is a potential situation. You're here in this court now. Yes, sir. I wouldn't talk about a remand. I talk about what you are facing right now. Anything could happen in this court at this point. And one of the things you want to be clear about, you say you have standing. You need to tell us why you have standing. The reason I have standing is this. The standing question, in terms of candidate standing, I said what any candidate would do. I gave you the favors Vercomo case. Nobody, and I've run campaigns. Nobody's going to say definitively they're going to run for something. They're going to consider it unless you know, number one, the district you got to run in. And yet, therefore, you want to know whether you can win. You're going to run as a Democrat or Republican. That is what you do. Can I ask you about that? I didn't see any representation that the districts were changing. This is about you've raised your only federal claim is about malapportioned, right, that there's voter dilution. So how does how does alleged dilution of the vote in your district injure you as a candidate in that district? Well, because I'm going to be running in a future election. The question is, was I going to run in a future election, not whether I was going to run in the election that was already taken? Yeah, let's let's assume that you are going to run and there's sufficient evidence that you are going to run. How are you injured by voter dilution in your district if you're a candidate? I am asking in here for an election in 2022. They say there won't be an election in 2022. I want to run in 2022. The state says they're not going to hold an election in 2022. I say Cozner says I have a right to run in 2022. They says it doesn't. You're talking about a district court case from 40 years ago. Three judge court case was a district court case. 40 years ago, but cited favorably. That's your authority for saying there's going to be an election in 2022. Well, under the Magmanus case, it says that if you rely on a precedent for the Fourth Circuit, that's a district court decision of 40 years ago. Well, I had a different set of facts. Well, that's true. It's a different it may be a different set of facts. But the fact is, it is courts don't make precedent for us. You need something else, though, than that case with Judge King saying you that's first of all, it's not even precedent. And then it's 40 years ago about an election coming up. That's not going to work. Well, what I am discussing is the fact that. I am challenging that the that the elections in 2021 were unconstitutional. We have to have a new election as soon as possible to fix it. I want to I believe it's 2022. I want to run in 2022. The nature of the relief you see gives you standing. Well, if I say you want an election next year, this year, I can't keep up with the year in order in order to get you're saying that since you won an election this year, that gives you standing to sue. The standing to sue comes from the fact that they had an illegal election that diluted my vote in 2021. I want the remedy to be an election in 2022. That's the only that's that's the remedy that I want. In 2021, it's over with been certified. Excuse me. The election in 2021 is over with and been certified. And you say it's an illegal election. I said they ran. Yes, they use unconstitutional districts in 2021. And the fact that you won an election and want to have us to order an election in 2022 or district districts in 2021 are unconstitutional. The variances is 80 percent. The state constitution says they were supposed to do it. They didn't do it. They argue that's a state claim. Cosner said it wasn't a state claim. Cosner's not a there are two other. You have the case of Bush v. Gore. You have the case of my agree grant, which says that if a state gives you a right to vote, that even if they didn't have to, they didn't have to say we must have an election in 2021 under the new districts. But if they do, those cases say that your rights protected by the constitution, the 14th Amendment, if they take it away, well, they took it away. They didn't hold an election under the new districts. They held an election under the old districts. Number two, they didn't seek a court order to violate the state constitution. The state constitution of Virginia is unique in this country. It's the only one that says in 2021, which is the year after the census, you shall have the election under the new districts. The only one that's in there. Bush v. Gore and Meyer v. Grant, in my opinion, stand for the proposition that if they grant you that you're protected by the Equal Protection Clause. That's a federal claim. Third, Reynolds v. Sims says that if you don't do decennial redistricting within 10 years, it's constitutionally suspect. Their plan right now is not to hold an election under the new districts until 2023. That is 12 years. That's constitutionally suspect. That's another federal claim. No state in the history of this country, Virginia or America, has ever waited to 2024, two or three years after the census, to seat a constitutionally approved General Assembly. Virginia will not elect the Senate under the new districts to 2023. Now, for the first time in history, they're not going to elect it to 2023, the House district. That means they won't get seated to 2024. That raises, under Sims, serious constitutional questions. That's the basis of my federal claims. But I also think I have a claim as a candidate because they're denying me an election that I think I'm entitled to. And in the case that I cited in my brief, it's Roger Gregory wrote the opinion. It's Mallory v. I forget the name, Harrington or something. He cites Cosner favorably and says, as Cosner says, that citizens have the right to have a vote for a constitutionally approved sound legislature as soon as possible. That's what I'm asking for, as soon as possible. They deny me in 2021. I don't want to wait to 2024 before it seats. That is the basis of my claim and that is standing to me. And if we want to get into the they're not challenging that the scheme they used in 2021 and 80 percent variance between the least populated and the most populated district. Harris v. Harris v. Arizona says you can't have more than 10 percent variance. I believe they're saying that's not the way you measure it, right? You want to talk about that? That they say you're supposed to measure against the ideal district. Can I address that? Because they completely misstate Brown v. Thompson. Completely. And if you look at Harris v. Arizona, I think it's 1306. Harris v. Arizona says exactly what and they cite Thompson. What they said in their brief was this. Mr. Goldman, yes, your district is 6.5 over using the 200 to 210. OK, but it has to be at least 10 percent over for you to have standing. That is not what Harris stands for. That is not what Brown says. It's a you measure the variance between the least populated and the most populated. That's the first question you have to answer when you have something that's more than 10 percent. OK, if it's less than 10 percent, you probably can sue. You're not going to win because that's within the range they allow it. If the variance is more than 10 percent, then it becomes constitutionally suspect. And they state can overcome that. But they have to present evidence, which, of course, they don't want to do. They never want to go to an evidentiary here. That is what Harris says. So it's the ideal district is a mathematical tool that is used to do the over and under. You know, that's it's a mathematical tool to determine what the maximum variance is. Harris, Brown, every case. That is how you determine what it is. Mahan V. Howell said the maximum variance was 16 percent. It's now down to 10. That's roughly that's roughly where they are. This is 80 percent. So they can't defend it. And I'm saying that because my that's just the rule in gerrymandering and redistricting cases, or is that the rule in one person, one voter dilution case in the Reynolds case? They misunderstand how you do gerrymandering. They misunderstand Gil. Reynolds says I'm entitled to an equally weighted vote compared to everybody. Everybody. They say because my district is only 85,000 and the ideal district is less, that I can't suffer any harm. That's not what it says. Is it is it the smallest district in the state? Sixty seven thousand four hundred and four. Mine is eighty five thousand two hundred and twenty three or eighty five thousand three forty four, depending upon which number you use. That's more than a 20 percent variance. So that's that's the that's the fundamental question of where you are dealing with redress ability. You say you look at the least populous, compare it to your district and then you do it. Uh, I I don't know what site you go with on that, because what Judge Russian is going is that it seems that decides that your district would be based on the one person, one vote principle, which you would do by looking at the representation that you're going to get in light of the new match, the new maps. So if you revise this map and and and look at what how you actually going to be voting, it actually looks like I don't know if there's a reduction or increase in your recommendation on it. So, I mean, that's not the same comparison. It's not what actually happened between those two. It's it's it's if you did once it's revised, then there's a comparison of the one vote, one person type of one person would vote. Is it? I still think you use the 2010, but Reynolds says I'm entitled to an equally weighted vote. My district's 85,000 or whatever it is. There's another district of 67 disagreement on that. The disagreement comes is how do you determine what's equally weighted because you are looking at what happened? The actual books from the old ones based on the districts, how they configure it, as opposed to the the the way what's ultimately going to happen and the words, how your vote is going to stack up with these counties and the other districts in light of the redistricted vote. But that dilution occurred when the vote occurred. Most of these cases, you challenge a scheme that hasn't been put into effect. And this is the unusual circumstance where I was diluted in 2021. I'm supposed to have a new constitutional district. They didn't give them to me. And I showed you the huge variance. That's when my vote was diluted. They can't be. That's where we're having some difficulty understanding. It looks to me that, yeah, you're right. If you look at the old one in terms of rep, but in terms of the maps and how the district happens, you, you, you, in fact, look like you're going to be overrepresented by where you are, where you are now, as opposed when these maps actually come out. Not in the legislature, sir. The legislature is based, reapportioned based on the election, based on the using the districts in two, that's, that's the problem. I got to wait to 2024 before my new district kicks in. I am still represented by the people picked in the old districts, and that's the harm. That's why you can't do it. That's the unusual circumstance in this case. Normally, when you challenge your redistricting after they pass it, and they're going to use it in the future, you say, hey, the new districts they have, then you show the variances. Here, they've already diluted me, and I can't fix it till 2024. That's, it's never happened before. That is my harm. I can't fix it unless they give me a new district as soon as possible. That's what Cosner was saying. That's what Chief Judge Gregory was saying. And that's what Reynolds says. It doesn't matter whether I'm, whether I'm near the ideal district or not. It's that this legislature is based on a scheme for the next couple of years where my 85,000 people get the same representative as somebody with 67,000. And there's not a case that says that is legit. Because it can't be. It violates the very basic premise of Reynolds, which says I'm entitled to it equally. And that, once, yes, and we have the new districts. And if we had a district, and if you had an election under the new districts, it wouldn't really matter whether it was ideal or not. Because if it was constitutional, it would be 10%. Some people would be lower than the ideal. Some people would be more. But my vote, my vote is being based on a 2010 census, districts drawn to a 2010 census. And for the next two years, mine being diluted. As is every other, as is so, if you look at my exhibit, there are 20, 30, 40 districts that suffer from that. There's one district that's got 130,000 people in it. And there's another district with 67,000. They propose that doesn't change to 2024. It is blatantly unconstitutional. And I'm in this courtroom today to try to get justice, not just for myself, but as Earl Warren said when they were doing the Reynolds v. Sims, that I'm actually here for those others similarly situated. They're just, they're looking at the wrong thing. I was diluted in November 2021. And they're saying, well, you know, we passed new districts and it's mathematical. It doesn't really go into effect to 2024. But you're cool now. No, I'm not cool to I get my constitutional right to have equal representation in the legislature with my vote. And that won't happen until there's an election under the new districts. And that's what Reynolds stands for. Mr. Goldman, I believe we understand your position. And we appreciate your spelling it out. Thank you, sir. And Mr. Ferguson, you've reserved two minutes. Thank you, Your Honor. I just want to make three very quick points. First, Judge Wynn, in response to your question about case law in which the court could consider standing in an interlocutory review of an order on immunity, the two sites from this court that I provide for you are Williams against Hansen, 326 F-569, and Districts of Columbia against Trump, 930 F-309, although that one was vacated on for other reasons subsequently to that. Second, my friend on the other side, I think, seems to suggest that the Commonwealth is afraid of the merits argument on this case about whether the 2021 election was constitutional. I just would like to be very clear. We are not afraid of the merits. If the courts conclude that Mr. Goldman has standing to maintain his claim, we will vigorously defend the constitutionality of the 2021 election. We do not think the 14th Amendment requires states to reapportion on the basis of census data that don't exist when the electoral process has begun. And third, Judge King, I think there was some suggestion that both sides were OK with the remand. I would just like to be very clear. We strongly prefer that the court decide standing in this instance, and I think that it's appropriate for three very quick reasons. First, if you but you say we have to decide standing first and foremost and you want us to do it. That's right. In any alternative, you want to remand. That's right. You're right. That's exactly nobody. We can't address. The immunity question until this tell unless the standing question is resolved in favor of Mr. Goldman. That's right, Judge King, and the reason that we think it's appropriate for this court to do it and then I will sit down or the following three reasons. First, the dispute at this point is purely legal. I know that there's a dispute about whether the 2010 or the 2020 census should provide the ideal district, but that's pending motion here before us to. Augment the record. Even now, there's a pending motion by Mr. Goldman to put this initial things in the record, which we haven't ruled on that. That is that is correct. So there are. The parties, only one of them at this point, trying to augment the record on appeal. At this stage, I believe that the motion was to augment not. You want us to act as the trial court and the appellate court with respect to honor. I'm not asking this court to act as the trial court. Most of the things in the supplement to proposed supplemental appendix are just documents from the lower court litigation. So this isn't a meaningful attempt to expand the record. So I think this is, in fact, purely a legal dispute. Second, insofar as this is a purely legal dispute, and we believe it is, I think judicial economy weighs pretty strongly in favor of the court deciding it. Now, we don't think this is a particularly thorny standing question of constraints, as you know. Well, so I want to address that question third, and I think that the answer is no for the following reason. The relief that my friend on the other side is requesting has obviously posed some systemic concerns about what the electoral process this year will look like. Again, our position is that the 2021 election was perfectly constitutional, and no remedy for any constitutional violation was required. But obviously, my friend disagrees and insists that he's entitled to an election now. We think that the court quickly resolving the standing dispute, insofar as the court believes he lacks standing, will help alleviate that systemic uncertainty. I think that's consistent with the Supreme Court's Purcell against Gonzalo's principle, which says that courts are supposed to stay out of election disputes once we're close to an election. In just the last couple weeks, the court has repeatedly said we're already so close to the 2022 election that federal courts should be staying their hand and not issuing injunctions with regard to state election rules. So insofar as this is a purely legal dispute, we believe it is, and insofar as it would favor judicial economy, we think it does, I think that the additional benefit of the court resolving standing right now would be that it will alleviate potential systemic uncertainty about what the 2022 election cycle will look like. And with that, Your Honor, we would ask that the court vacate the lower court judgment, remand with instructions to dismiss the complaint. Thank you all. Thank you, Mr. Ferguson. We appreciate the oral arguments by both sides very much, and if we could do so, we'd come down and congratulate the parties and counsel and thank you for your services personally, as this court has a long tradition of doing. But we're not doing that because of the pandemic. We'll hope to do that next time you're here. And with that, Madam Clerk, we'll adjourn court until 930 tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, James Andrew Wynn, Allison J. Rushing